UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ACD DISTRIBUTION, LLC,

Plaintiff,

v.

WIZARDS OF THE COAST, LLC,

Defendant.

CASE NO. C18-1517JLR

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## I. INTRODUCTION

Before the court is Defendant Wizards of the Coast, LLC's ("Wizards" or "WOTC") motion for partial judgment on the pleadings. (Mot. (Dkt. # 44).) Plaintiff ACD Distribution, LLC ("ACD") opposes the motion. (Resp. (Dkt. # 47).) The court has considered the motion, the parties submissions in support of and in opposition to the

//

//

//

motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS WOTC's motion.

## II. BACKGROUND

### A. Factual Background

ACD is a distribution company located in Middleton, Wisconsin that distributes toys and games. (*See* Compl. (Dkt. # 1-2) ¶ 1.) This case arises from a dispute regarding ACD's distribution agreements with WOTC. (*Id.* ¶¶ 38-49.) WOTC is located in Renton, Washington, and publishes science-fiction and fantasy games, including "Magic: The Gathering" ("Magic"). (*Id.* ¶ 2.) ACD has represented WOTC and sold WOTC's products to retailers since 1993. (*Id.* ¶ 4.) ACD alleges that its distribution of Magic, WOTC's premier product, "laid the foundation for the opening of ACD's business and the distribution of WOTC products is the cornerstone of ACD's 25-year history." (*Id.* ¶ 5.) WOTC's products accounted for a substantial portion of ACD's business. ACD alleges that "ACD's sales and marketing employees spend 30% to 40% of their working time answering customers' questions about WOTC products, taking WOTC orders,

[1] Both parties request oral argument (*see* Mot. at 1; Resp. at 1). Oral argument is not necessary where the non-moving party suffers no prejudice. *See Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984); *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (holding that no oral argument was warranted where "[b]oth parties provided the district court with complete memoranda of the law and evidence in support of their respective positions," and "[t]he only prejudice [the defendants] contend they suffered was the district court's adverse ruling on the motion."). "When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*). Here, the issues have been thoroughly briefed by the parties, and oral argument would not be of assistance to the court. *See* Local Rules W.D. Wash. LCR 7(b)(4). Accordingly, the court DENIES the parties' requests for oral argument.

explaining WOTC role playing games, and discussing the availability of WOTC products." (*Id.* ¶ 17; *see also id.* ¶ 21 (alleging that WOTC product accounts for about $2,000,000.00 of ACD's $5,500,000.00 total inventory).)

ACD alleges that in 2013, it expanded its sales, service, warehousing, and shipping capabilities based on requests from WOTC. (*Id.* ¶ 19.) According to ACD, "WOTC knew about these upgrades and ACD would not have upgraded all three of its distribution centers but for the WOTC distribution relationship." (*Id.* ¶ 21.)

ACD and WOTC's relationship was governed by distributor agreements. (*Id.* ¶ 7.) At issue in this case is WOTC's decision not to renew the parties' distributor agreement entered into on January 1, 2016 (the "2016 Agreement"). (*See id.* ¶ 6; *see also* Howard Decl. (Dkt. # 45) ¶ 2, Ex. A ("2016 Agreement").)[2] The 2016 Agreement includes the following clauses that are relevant to WOTC's motion:

> **7.1 Term.** The term of this Agreement ("Term") commences on the Effective Date and expires on December 31, 2018, unless terminated earlier pursuant to Section 7.2 or Section 7.4, or any other Section of this Agreement that expressly permits early termination. Renewal of this Agreement, if applicable, will not occur except by the express and explicit written agreement of the parties.

**********

//

[2] The 2016 Agreement is central to ACD's complaint (*see* Compl. ¶¶ 7, 28, 32-37) and neither party disputes its authenticity (*see generally* Dkt.). Accordingly, the court takes judicial notice of and may consider the 2016 Agreement in resolving WOTC's motion for partial judgment on the pleadings without converting the motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Chandola v. Seattle Hous. Auth.*, No. C13-557 RSM, 2014 WL 4540024, at *1 (W.D. Wash. Sept. 11, 2014) (holding that the court may properly take judicial notice of documents whose authenticity is not contested and which the plaintiff has relied on the complaint); *see also* Fed. R. Evid. 201.

> **<u>8.1 Governing Law.</u>** This Agreement will be governed by and interpreted in accordance with the laws of the State of Washington, without reference to conflict of laws.
>
> **<u>8.2 Consent to Jurisdiction.</u>** The parties irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the United States District Court for the Western District of Washington or the Superior Court for Washington for the County of King any actions, suits, or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby (and agree not to commence any action, suit or proceeding relating thereto except in such courts) . . . .

(*See* 2016 Agreement ¶¶ 7.1, 8.1, 8.2.)

ACD alleges that on July 6, 2018, WOTC informed ACD by phone and without written notice that WOTC would not renew the 2016 Agreement for 2019. (*See* Compl. ¶ 28.) ACD alleges that WOTC did not provide any reasons for the non-renewal, "explaining that ACD had done nothing wrong and that ACD is a good business partner." (*See id.* ¶ 32.) ACD contends that "it will have to close if it loses its distribution agreement with WOTC." (*See id.* ¶ 37.)

Based on the above allegations and others, ACD brings two claims against WOTC: (1) a claim for violation of Wisconsin's Fair Dealership Law ("WFDL"), Wis. Stat. § 135.03.01 *et seq.*, (*id.* ¶¶ 39-44); and (2) a claim for breach of the common law duty of good faith and fair dealing (*id.* ¶¶ 46-49).

**B. Procedural Background**

ACD originally filed its complaint on August 8, 2018, in Dane County Circuit Court. (*See id.* at 1.) WOTC removed the case the next day to the United States District Court for the Western District of Wisconsin. (*See* Not. of Removal (Dkt. # 1).) On August 13, 2018, WOTC filed a motion to transfer venue to the Western District of

Washington. (*See* Transfer Mot. (Dkt. # 4).) The Honorable Judge James D. Peterson granted that motion. (*See* Transfer Order (Dkt. # 15) at 2 ("There is no dispute that the forum selection clause applies to ACD's claims in this case and that the clause requires a transfer to Washington.").) WOTC filed the present motion for partial judgment on the pleadings on March 12, 2020. (*See* Mot. at 1.)

## III. ANALYSIS

WOTC seeks a ruling that Washington law—not Wisconsin law—applies to this case and, on that basis, argues that it is entitled to judgment on the pleadings in favor of WOTC on ACD's claim under the WFDL. (*See* Mot. at 5.) The court sets forth the applicable legal standards for judgment on the pleadings and choice of law before analyzing WOTC's motion.

### A. Standard for Rule 12(c) Motion for Judgment on the Pleadings

The standard for dismissing claims under Rule 12(c) is "substantially identical" to the Rule 12(b)(6) standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, we have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule.") (internal quotation marks and citation omitted). This is because, "under both rules, a court must determine whether the facts alleged in the complaint, taken as

//

true, entitle the plaintiff to a legal remedy." *Chavez*, 683 F.3d at 1008 (internal quotation marks and citation omitted).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A motion under [Rule] 12(b)(6) tests the formal sufficiency of the statement of claim for relief." *Palms v. Austin*, C18-0838JLR, 2018 WL 4258171, at *4 (W.D. Wash. Sept. 6, 2018) (quoting *Fednav Ltd. v. Sterling Int'l*, 572 F. Supp. 1268, 1270 (N.D. Cal. 1983)). "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court may properly take judicial notice of documents whose authenticity is not contested and which the plaintiff has relied on the complaint. *Chandola v. Seattle Hous. Auth.*, No. C13-557 RSM, 2014 WL 4540024, at *1 (W.D. Wash. Sept. 11, 2014).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When considering a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and must accept all well-pleaded allegations of material fact as true, *see Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). However, the court need not accept as true a legal conclusion presented as a factual allegation. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 550).

**B. Choice of Law**

Generally, "the law applicable to a diversity case does not change upon a transfer initiated by a defendant." *See Ferrens v. John Deere Co.*, 494 U.S. 516, 523 (1990). Under the general rule, Wisconsin's choice of law rules would apply because ACD originally filed this action in Wisconsin before transfer to the Western District of Washington under 28 U.S.C. § 1404(a). *See id.* However, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a [28 U.S.C.] § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). Otherwise, litigants violating contractual forum-selection provisions would "fasten [their] choice of substantive law to the venue transfer," an "inequitable" result that would "encourage gamesmanship." *Id.* at 65.

In transferring this case to the Western District of Washington, the Western District of Wisconsin concluded that "[t]here is no dispute that the forum selection clause

applies to ACD's claims in this case and that the clause requires a transfer to Washington." (*See* Transfer Order at 2.) Accordingly, *Atlantic Marine* requires this court to apply Washington's choice-of-law rules.[3]

Washington courts "generally enforce choice of law provisions," subject to certain exceptions. *McKee v. AT & T Corp.*, 191 P.3d 845, 851 (Wash. 2008) (citing *Erwin v. Cotter Health Ctrs., Inc.*, 167 P.3d 1112, 1123 (Wash. 2007)). Where parties dispute choice of law in the face of a contractual choice-of-law provision, Washington courts first determine (1) whether there is an actual conflict of laws between the two proposed states, and if so, (2) whether the choice-of-law provision is effective. *Erwin*, 167 P.3d at 1120. If the result for a particular issue "is different under the law of the two states, there is a 'real' conflict." *Id.* (quoting *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997)).

If there is a "real" conflict, the court will enforce the choice-of-law provision if "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflicts of Laws ("Restatement") § 187(1) (Am. Law Inst. 1971). Moreover, Washington courts will enforce the choice-of-law provision even if the issue is not one that the parties could have resolved by an explicit provision unless it meets one of the two exceptions listed in Section 187(2) of the Restatement:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

---

[3] ACD does not dispute that Washington's choice-of-law rules apply. (*See* Resp. at 8.)

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties

Restatement § 187(2). ACD does not contend that Washington "has no substantial relationship to the parties or the transaction." (*See generally* Resp.) Therefore, to meet Section 187(2)'s exception, ACD must rely on Section 187(2)(b) and show that (1) Wisconsin has the most significant relationship to the parties (*see* Restatement § 188); (2) Wisconsin has a materially greater interest than Washington in the determination of the particular issue; and (3) application of Washington law would be contrary to a fundamental policy of Wisconsin. ACD bears the burden to satisfy all three prongs of Section 187(2)(b). *See Erwin*, 167 P.3d at 1122. If ACD fails to meet its burden as to any single prong, the court will enforce the choice-of-law provision.

**C. WOTC's Motion**

The court concludes that (1) there is an actual conflict between Washington and Wisconsin law and (2) the choice-of-law provision is enforceable because ACD fails to meet its burden to show that Wisconsin has a materially greater interest. For these reasons, the court GRANTS WOTC's motion.

1. <u>Actual Conflict of Laws</u>

The parties agree that an actual conflict of laws exists (*see* Mot. at 10-11; Resp. at 9-10). Under Wisconsin law, and assuming it applies, the WFDL prohibits a dealership from "terminat[ing], cancel[ling], fail[ing] to renew or substantially chang[ing] the

competitive circumstances of a dealership agreement without good cause" and without notice. Wis. Stat. Ann. § 135.03. In contrast, no Washington statute requires grantors to show good cause or provide notice for "failing to renew" a dealership agreement. The closest corollary law to the WFDL in Washington is the Washington Franchise Investment Protection Act ("FIPA"), RCW 19.100.010 *et seq*., which contains no notice or good cause requirements for failing to renew a distributor agreement. ACD concedes that Washington law "does not protect ACD from the very thing it complains of: wrongful termination of a distribution agreement." (*See* Resp. at 9.) Accordingly, the court concludes there is an actual conflict and will engage in a choice of law analysis.

2. Choice of Law: Section 187(1)

As an initial matter, the parties dispute whether Restatement Section 187(1) or 187(2) applies. (*See* Mot. at 11; Resp. at 10.) That dispute is largely based on the parties' competing formulations of the issue at stake. WOTC contends that Section 187(1) applies because "the length of the contract relationship—the core dispute in this case"—is an issue for which the parties could and did contract. (*See* Mot. at 11.) In contrast, ACD contends that the issue at stake is "the substantial validity of the parties' agreement under the WFDL, its termination provision and its prohibition of circumventing the WFDL by contract." (*See* Resp. at 10.)

"Whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by the application of" the most significant relationship test found in Section 188. *See* Restatement § 187 cmt. c. If Wisconsin has the most significant relationship,

the parties could not have contracted to waive the WFDL's notice and good cause requirements, and Section 187(1) would not apply to the choice of law analysis. *See* Wis. Stat. § 135.025 (stating that the notice and good cause provisions of the WFDL "may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only."). However, if Washington law applies, the parties could have determined whether to include notice and good cause requirements by explicit agreement in their contract, and Section 187(1) would apply, rendering the choice-of-law provision enforceable. However, because the court concludes that the choice-of-law provision is enforceable regardless of whether Section 187(1) or Section 187(2) applies, the court declines to resolve the parties' dispute over which of the two subsections applies.

3. Choice of Law: Section 187(2)

As set forth above, to avoid the choice-of-law provision in the 2016 Agreement, ACD bears the burden to satisfy all three prongs of Section 187(2)'s exception and to show that (1) Wisconsin has the most significant relationship to the parties, *see* Restatement § 188; (2) Wisconsin has a materially greater interest than Washington in the determination of the particular issue; and (3) application of Washington law would be contrary to a fundamental policy of Wisconsin. *See* Restatement § 187(2)(b); *Erwin*, 167 P.3d at 1122.

ACD fails to show that Wisconsin has a "materially greater interest" here. ACD contends that Wisconsin has a greater interest because (1) "the WFDL dictates as much" and (2) "ACD's Wisconsin operations give rise to the vast majority of transactions and

communications between the parties." (*See* Resp. at 13.) ACD's first argument fails because it assumes Wisconsin law applies in the first place. The Washington Supreme Court addressed a similar argument in *Erwin*. In that case, the defendant argued that applying Washington law "offends California policy because the agreement and [the plaintiff's] services are illegal in California." *Erwin*, 167 P.3d at 1122. The court determined that the defendant "assumes his conclusion, that California law applies, as a premise in his argument that applying Washington law is contrary to California policy and therefore California law applies." *Id.*; *see also WF Capital, Inc. v. Barkett*, No. C10-524RSL, 2010 WL 3064413, at *2 (W.D. Wash. Aug. 2, 2010). ACD's second argument fails because it conflates the "materially greater interest" prong with the "most significant relationship" prong.

Even if the court assumed that the WFDL applies in determining Wisconsin policy, at most it would show that Wisconsin seeks "[t]o promote the compelling interest of the public in fair business relations between dealers and grantors, and in continuation of dealerships on a fair basis" and to "protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealership." Wis. Stat. § 135.025(2)(a)-(b). However, ACD provides no authority that suggests that applying Washington law would contravene those purposes where, as here, the Wisconsin dealer specifically agreed to a contract that requires the application of out-of-state law. (*See generally* Resp.)

//

//

Moreover, Washington, along with all other states, has a strong interest in "protecting the justifiable expectations of the contracting parties." *CH2O, Inc. v. Bernier*, No. C-11-5153-RJB, 2011 WL 1485604, at *8 (W.D. Wash. Apr. 18, 2011) (citing *Erwin*, 167 P.3d at 1123). Comments to Section 187 of the Restatement further buttress this conclusion. The Restatement explains that in applying Section 187, "protecting the justified expectations of the parties . . . come[s] to the fore." Restatement § 6 cmt. c. "Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." *Erwin*, 167 P.3d at 1123 (quoting Restatement § 6 cmt. g). Likewise, "[p]redictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions." *Id.* (quoting Restatement § 6 cmt. i).

For the above reasons, ACD fails to show that Wisconsin's interests as a whole "materially outweigh" Washington's interest in "protecting the justifiable expectations of" contracting parties. *CH2O*, 2011 WL 1485604, at *8 (citing *Erwin*, 167 P.3d at 1123). Having determined that ACD fails to satisfy the "materially greater interest" prong, the court concludes it is unnecessary to analyze the remaining two Section 187(2)(b) prongs.[4] Because the 2016 Agreement's choice-of-law provision is

[4] ACD contends that the choice-of-law analysis is fact-intensive and depends on matters outside of the pleadings. (*See* Resp. at 14.) Therefore, ACD argues that a choice of law determination on WOTC's Rule 12(c) motion for judgment on the pleadings is premature. (*See id.*) However, ACD does not contend—nor could it—that the "materially greater interest" prong is fact-intensive. (*See generally id.*) Because the court resolves the choice of law analysis on the

enforceable regardless of whether Section 187(1) or Section 187(2) applies, the court concludes that Washington law governs the 2016 Agreement. Accordingly, the court grants WOTC's motion and dismisses ACD's Wisconsin law-based WFDL claim.

## IV. CONCLUSION

Based on the foregoing analysis, the court (1) GRANTS Defendant WOTC's motion for partial judgment on the pleadings (Dkt. # 44) and (2) DISMISSES ACD's claim under the Wisconsin Fair Dealership Law (*see* Compl. (Dkt. # 1-1 ¶¶ 38-44)).

Dated this 17th day of June, 2020.

JAMES L. ROBART
United States District Judge

---

materially greater interest prong, the court concludes that further factual development is unnecessary to resolve this motion.